Eichholz v Panzer-Eichholz (2020 NY Slip Op 06500)





Eichholz v Panzer-Eichholz


2020 NY Slip Op 06500


Decided on November 12, 2020


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on November 12, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

WILLIAM F. MASTRO, J.P.
JEFFREY A. COHEN
COLLEEN D. DUFFY
VALERIE BRATHWAITE NELSON, JJ.


2018-14883
 (Index No. 6884/13)

[*1]Steven Eichholz, respondent, 
v
Susan Panzer- Eichholz, appellant.


Berger, Fischoff, Shumer, Wexler & Goodman LLP, Syosset, NY (Brad A. Schlossberg of counsel), for appellant.



DECISION & ORDER
In an action, inter alia, in effect, to vacate a separation agreement, the defendant appeals from an order of the Supreme Court, Suffolk County (Joseph C. Pastoressa, J.), dated October 18, 2018. The order, insofar as appealed from, granted that branch of the plaintiff's motion which was for summary judgment on the cause of action, in effect, to vacate the parties' separation agreement, and denied that branch of the defendant's cross motion which was for summary judgment dismissing that cause of action.
ORDERED the order is modified, on the law, by deleting the provision thereof granting that branch of the plaintiff's motion which was for summary judgment on the cause of action, in effect, to vacate the parties' separation agreement, and substituting therefor a provision denying that branch of the motion; as so modified, the order is affirmed insofar as appealed from, without costs or disbursements.
The parties were married in October 1992 and have three children together. In or around 2010, the plaintiff began to suffer from bouts of depression culminating in multiple suicide attempts and hospitalizations. As part of his treatment, the plaintiff was placed on medication and received electro-convulsive therapy. After the plaintiff was released from the hospital on December 14, 2011, he attended a day treatment program at a specialized psychiatric hospital. In or around this time, the defendant's attorney drafted a separation agreement dated December 22, 2011. On or about December 23, 2011, the plaintiff and the defendant went to a bank together, where the plaintiff signed the separation agreement before a notary public. The defendant had previously signed the separation agreement before a notary public on December 22, 2011. According to the plaintiff, the defendant had showed him the separation agreement for the first time on December 22, 2011, the day before the plaintiff signed it, and threatened that she had an order of protection against the plaintiff excluding him from the marital residence, and that if he did not sign the agreement, he would not be allowed to return to the marital residence.
Under the terms of the separation agreement, the defendant was awarded sole custody of the parties' children, and the plaintiff was awarded supervised parental access with the children. The separation agreement indicated that the plaintiff's adjusted gross income was $0 per year, and that the defendant's adjusted gross income was $229,375 per year. The plaintiff agreed to pay the defendant $25 per month in child support. The parties agreed to share equally the cost of college for the children and to share equally the unreimbursed medical expenses for the children, and the [*2]defendant agreed to maintain the children under her health insurance policy. Under the separation agreement, the defendant was entitled to exclusive use and occupancy of the marital residence until the parties' youngest child turned 18 years old, at which time the defendant would have the right of first refusal to buy the plaintiff's equity share in the marital residence, or the marital residence would be sold and the profits distributed evenly between the parties. The defendant was responsible for the mortgage payments and the carrying costs associated with the marital residence, and when the residence was sold, the defendant was entitled to a credit for every dollar that she reduced the balance on the mortgage principal. The parties agreed to share evenly the cost of repairs to the marital residence in excess of $200. The defendant was awarded sole ownership of a time-share property that the parties jointly owned, as well as three vehicles, one of which would be used by the parties' oldest child. The plaintiff waived his right to the parties' joint bank accounts, as well as any other bank accounts held in the defendant's name, his right to maintenance from the defendant, and his right to the defendant's pension and/or retirement accounts. The separation agreement states that the plaintiff "shall continue to be the sole owner" of real property that he inherited from his parents, "such property being the separate property of" the plaintiff, and that a 2000 Ford Taurus shall be the sole property of the plaintiff.
The separation agreement states that the plaintiff was "advised to select and obtain counsel to represent him," and that the plaintiff "elected to execute [the agreement] without the benefit of an attorney." In addition, the agreement states that "[e]ach party has made independent inquiry into the complete financial circumstances of the other, and acknowledges that he or she is fully informed of the income, assets, property and financial prospects of the other . . . and is satisfied that full disclosure has been made." According to the plaintiff, however, the parties did not exchange financial disclosure prior to executing the separation agreement.
In or around March 2013, the plaintiff commenced this action, inter alia, in effect, to vacate the parties' separation agreement. The plaintiff thereafter moved, among other things, for summary judgment on the cause of action, in effect, to vacate the separation agreement on the ground of unconscionability. The plaintiff argued that he did not understand the terms of the separation agreement when he executed the agreement because he was under the influence of psychotropic medication and the effects of electro-convulsive therapy, and that he signed the agreement without legal representation and because the defendant had threatened to force him out of the marital residence. The defendant cross-moved, inter alia, for summary judgment dismissing the cause of action, in effect, to vacate the separation agreement.
In an order dated October 18, 2018, the Supreme Court, among other things, granted that branch of the plaintiff's motion which was for summary judgment on the cause of action, in effect, to vacate the separation agreement, and denied that branch of the defendant's cross motion which was for summary judgment dismissing that cause of action. The defendant appeals.
"Agreements between spouses . . . involve a fiduciary relationship requiring the utmost of good faith. There is a strict surveillance of all transactions between married persons, especially separation agreements. Equity is so zealous in this respect that a separation agreement may be set aside on grounds that would be insufficient to vitiate an ordinary contract" (Christian v Christian, 42 NY2d 63, 72 [citations omitted]). "Generally, separation agreements which are regular on their face are binding on the parties, unless and until they are put aside" (id. at 71). "Judicial review is to be exercised circumspectly, sparingly and with a persisting view to the encouragement of parties settling their own differences in connection with the negotiation of property settlement provisions. Furthermore, when there has been full disclosure between the parties, not only of all relevant facts but also of their contextual significance, and there has been an absence of inequitable conduct or other infirmity which might vitiate the execution of the agreement, courts should not intrude so as to redesign the bargain arrived at by the parties on the ground that judicial wisdom in retrospect would view one or more of the specific provisions as improvident or one-sided" (id. at 71-72).
"A separation agreement or stipulation of settlement which is fair on its face will be enforced according to its terms unless there is proof of fraud, duress, overreaching, or [*3]unconscionability" (Linder v Linder, 297 AD2d 710, 711; see Hughes v Hughes, 131 AD3d 1207, 1208; Kabir v Kabir, 85 AD3d 1127, 1127). However, because of the fiduciary relationship existing between spouses, a marital agreement should be closely scrutinized and may be set aside upon a showing that it is unconscionable or the result of fraud or where it is shown to be manifestly unjust because of the other spouse's overreaching (see Jon v Jon, 123 AD3d 979; Potter v Potter, 116 AD3d 1021, 1022). "In general, an unconscionable contract has been defined as one which is so grossly unreasonable as to be unenforc[ea]ble because of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party" (King v Fox, 7 NY3d 181, 191; see Gillman v Chase Manhattan Bank, 73 NY2d 1, 10; Simar Holding Corp. v GSC, 87 AD3d 688, 689). "This definition reveals two major elements which have been labeled by commentators, procedural and substantive unconscionability. The procedural element of unconscionability concerns the contract formation process and the alleged lack of meaningful choice; the substantive element looks to the content of the contract, per se" (State of New York v Wolowitz, 96 AD2d 47, 67 [citation omitted]; see Simar Holding Corp. v GSC, 87 AD3d at 689). A reviewing court examining a challenge to a separation agreement "will view the agreement in its entirety and under the totality of the circumstances" (Jon v Jon, 123 AD3d at 980; see Kabir v Kabir, 85 AD3d at 1127-1128; Reiss v Reiss, 21 AD3d 1073, 1074).
Here, contrary to the defendant's contention, the complaint adequately pleaded a cause of action, in effect, to vacate the separation agreement on the ground of unconscionability. However, in support of his motion, the plaintiff failed to demonstrate his prima facie entitlement to judgment as a matter of law on the cause of action, in effect, to vacate the separation agreement on the ground of unconscionability. The plaintiff failed to demonstrate as a matter of law through medical records or testimony from a doctor that his ability to understand the terms of the separation agreement when he executed the agreement was impaired by medication or prior treatment that he received. In addition, the plaintiff failed to demonstrate, prima facie, that the manner in which the defendant presented the separation agreement to the plaintiff, along with the plaintiff's lack of legal representation and the lack of financial disclosure between the parties, served to deprive the plaintiff of a meaningful choice in entering into the separation agreement. Further, although the defendant was awarded a majority of the marital assets under the agreement, the record does not contain sufficient evidence demonstrating the value of most of these assets. In addition, although the plaintiff, who did not have an income when the agreement was executed, waived his right in the separation agreement to maintenance from the defendant, who made a significant salary, this waiver, by itself, was insufficient to demonstrate that the agreement as a whole was unconscionable. A hearing was warranted to determine the totality of the circumstances, including the extent of the parties' assets and the circumstances surrounding the execution of the separation agreement, and as such, summary judgment should have been denied (see Mizrahi v Mizrahi, 171 AD3d 1161; Gardella v Remizov, 144 AD3d 977; Jon v Jon, 123 AD3d 979; McKenna v McKenna, 121 AD3d 864, 866; David v #1 Mktg. Serv., Inc., 113 AD3d 810; Simar Holding Corp. v GSC, 87 AD3d 688; Kabir v Kabir, 85 AD3d 1127).
Accordingly, the Supreme Court should have denied that branch of the plaintiff's motion which was for summary judgment on the cause of action, in effect, to vacate the parties' separation agreement.
We agree with the Supreme Court's determination to deny that branch of the defendant's cross motion which was for summary judgment dismissing the cause of action, in effect, to vacate the parties' separation agreement. In support of the defendant's cross motion, she submitted her own affidavit and a single medical record from the plaintiff's outpatient treatment. This evidence was insufficient to demonstrate, prima facie, that the plaintiff had a meaningful choice in entering into the separation agreement, and that the provisions of the separation agreement were not unreasonably favorable to the defendant.
MASTRO, J.P., COHEN, DUFFY and BRATHWAITE NELSON, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court